DANIEL L. DYSART, Judge.
I,FACTUAL BACKGROUND
On November 15, 2007, plaintiffs-appel-lees, Troy E. Perez (“Perez”) and Jason Cutrer (“Cutrer”) (sometimes collectively referred to as “plaintiffs”) filed a Petition for Damages (“Petition”) against Evenstar, Inc. (“Evenstar”) and its insurer, First Mercury Insurance Company (“First Mercury”) for property damages to Perez’s and Cutrer’s properties. According to the Petition, Perez’s company, Millineum Trading, Inc. (“Millineum”), contracted with Evenstar for the latter to excavate a borrow pit on Perez’s property located in Braithwaite, Louisiana. Evenstar began its work on November 17, 2006 allegedly without obtaining proper permits or complying with parish ordinances, resulting in a demand from the Plaquemines Parish government by letter dated March 14, 2007 to Perez and Evenstar that Perez back-fill the pit and/or face legal action. According to Perez, Evenstar, aware that it failed to comply with local ordinances/permits, continued to excavate the pit until “some time after November 17, 2007.”
Perez maintains that, in performing its work, Evenstar allowed topsoil, “pushed ... to the sides of the pit” to remain, which adversely affected drainage and 12caused damage to his property. Cutrer, who owns the adjacent property, joined in the Petition, claiming extensive damage to his property caused by Evenstar’s “knocking down approximately one acre of trees, laying and drying mud on [his] property, and damaging and leaving [it] in a mess.”
Plaquemines Parish Government (“Plaquemines”) intervened in the action on December 4, 2007. Named as defendants in the Petition in Intervention and for Injunctive Relief, or in the Alternative Damages (“Intervention”) are Perez, Cut-rer, Ceres Caribe, Inc. (“CCI”) and fictitious insurance companies. Plaquemines adopted the allegations of plaintiffs and further alleged that that CCI acted “in concert” with Evenstar in “illegally” excavating the borrow pit. Through the Intervention, Plaquemines sought injunctive relief by way of an order that the parties refill the borrow pit, pursuant to parish Ordinance 18-1 (hereinafter sometimes referred to as the “Ordinance”).[1] In the alternative, Plaquemines sought damages for the cost of refilling the borrow pit if it did so itself.
Perez and Cutrer then filed Cross-Claims against CCI and its fictitious insurers, alleging that CCI was the general contractor on the project which oversaw and supervised Evenstar’s work. They allege that CCI was negligent in failing to obtain the proper permits and to comply with other government requirements, in failing to properly supervise Evenstar and in failing to back-fill the property, subjecting plaintiffs to suit, claims, potential fines and damages.
|3In a Supplemental Petition and Cross-Claim, Plaintiffs added First Mercury Insurance Company (“First Mercury”) as a defendant, in its capacity as Evenstar’s public liability insurer. Plaintiffs sought defense and indemnity from First Mercury to the claims alleged in the Intervention. Plaintiffs also sought bad faith penalties and attorney’s fees pursuant to La. R.S. 22:658 and 22:1220 against First Mercury.[2] *901 In May, 2010, CCI filed a Cross Claim against Evenstar and First Mercury, seeking defense and indemnity for the claims of plaintiffs and PPG pursuant to a Release, Hold Harmless and Indemnity Agreement.
By way of an Amended Answer to the Intervention filed on October 14, 2010, plaintiffs raised the issue of the Ordinance’s constitutionality, alleging that it is unconstitutionally vague and indefinite in that it “gives the Plaquemines Parish Council the authority to grant or deny permits but fails to establish any guidelines or standards for the exercise of its discretion in doing so.” Plaintiffs further maintain that it is unconstitutional insofar as it was passed without complying with the notice requirements of the Plaque-mines Parish Charter. On these bases, plaintiffs maintain that the Ordinance cannot be enforced.[3]
On November 2, 2011, Plaquemines amended its Intervention, re-urging that the Ordinance requires the parties to refill the borrow pit. It added the further allegation that the parties violated the permit requirements of parish ordinance 9-40 and the “borrow pit moratorium” of parish ordinance 92-100.
14First Mercury filed three motions for partial summary judgment on October 18, 2010.[4] Thereafter, on June 17, 2011, Plaintiffs and Evenstar filed a Joint Motion for Summary Judgment (“Joint Motion”), alleging that the Ordinance is invalid as Plaquemines enacted it without complying with the notice requirements of the Plaquemines Parish Home Rule Charter. The Joint Motion further alleges that the Ordinance is unconstitutional for the reasons set forth in Amended Answer to the Intervention. CCI filed its own Motion for Summary Judgment, adopting the arguments set forth in the Joint Motion.[5]
First Mercury’s Motions for Partial Summary Judgment and the Joint Motion were heard on February 9, 2012. By judgment dated February 29, 2012, the trial court granted all three of First Mercury’s motions. By separate judgment also dated February 29, 2012, the trial court granted the Joint Motion and dismissed Plaque-mines’ Intervention with • prejudice. Plaquemines requested written reasons for judgment, which the trial court issued on March 12, 2012.[6] In its Reasons for Judgment, the trial court concluded that the Ordinance is unconstitutional vague as it did not “contain any standards or uniform rules for determining whether a permit for a borrow pit or other excavation should be granted or denied.”
|fiOn April 4, 2012, Plaquemines filed a Motion for Suspensive Appeal to the Louisiana Supreme Court pursuant to Article V, section 5(D) of the Louisiana Constitu *902 tion.[7] The Louisiana Supreme Court converted the Motion for Suspensive Appeal to a writ application and granted it. The per curiam decision found that the issue of the constitutionality the Ordinance was not properly before the court:
Although the district court’s reasons for judgment discuss the constitutionality of the ordinance, it is well-settled law that the trial court’s oral or written reasons form no part of the judgment ... Because there is no declaration of unconstitutionality in the district court’s judgment, there is no basis for the exercise of this court’s appellate jurisdiction. Accordingly, the appeal is transferred to the court of appeal for further proceedings.
Perez v. Evenstar, Inc., 2012-1003, pp. 1-2 (La.6/22/12), 91 So.3d 288, 288-289. (Citations omitted).
This appeal follows. We note that the Motion for Suspensive Appeal pertains to both judgments issued by the trial court on February 29, 2012; however, in its appellate brief, Plaquemines does not address the judgment granting First Mercury’s three Motions for Partial Summary Judgment. Accordingly, we consider Plaquemines to have abandoned any issue as to that judgment. See: Alden v. Lorning, 2004-0724, p. 10 (La.App. 4 Cir. 5/4/05), 904 So.2d 24, 30 (“pursuant to Rule 2-12.4 of the Uniform Rules-Courts of Appeal, ‘the court may consider as abandoned any specification of assignment of error which has not been briefed.’ Accordingly, because the issue was not briefed, we consider the issue to be ^abandoned”).[8]
We now turn to the merits of this appeal, in which Plaquemines raises three issues: (1) the trial court’s finding that the Ordinance is unconstitutional; (2) the trial court’s granting of summary judgment as to the issue of the manner in which the Ordinance was enacted (and more specifically, Plaquemines’ failure to properly advertise the ordinance prior to its enactment); and (3) the trial court’s granting of summary judgment as to the permit requirements under ordinance 9-40. DISCUSSION
Constitutionality of the Ordinance
We pretermit a discussion of the trial court’s declaration that the Ordinance is unconstitutional as that issue is not properly before us. Under Article 5 Sec. 5(D) of the Louisiana Constitution of 1974, “[i]n addition to other appeals provided by this constitution, a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional or (2) the defendant has been convicted of a capital offense and a penalty of death actually has been imposed.” (Emphasis added). As the Louisiana Supreme Court recently held, when a statute has been declared unconstitutional, the Louisiana Supreme Court has exclusive appellate jurisdiction. See: State v. Williams, 11-0958, p. 5 (La.7/2/12), 94 So.3d 770, 774, citing, State v. Williams, 10-1335 (La.App. 1 Cir. 2/11/11), 2011 WL 2178753 (unpub’d).
We note the distinction between the Supreme Court’s supervisory jurisdiction and appellate jurisdiction which was *903 explained in Unwired Telecom Corp. v. Parish of Calcasieu, 200S-0732 (La.1/19/05), 903 So.2d 392, 400, fn. 8, citing Chief Justice Calogero’s concurrence in City of Baton Rouge v. Ross, 94-0695 (La.4/28/95), 654 So.2d 1311, 1327:
“The distinction between supervisory and appellate jurisdiction is a continuation of existing terminology, ‘supervisory’ referring to the court’s discretionary jurisdiction under which it has the power to select the cases it will hear, and ‘appellate’ contemplating cases in which a party as a matter of right can demand that the court hear a case.” (Emphasis in original).
This Court has considered the role of the appellate court when an appeal is taken to it over a trial court’s finding that a statute is unconstitutional. In Sherman v. Cabildo Construction Co., 483 So.2d 1210 (La.App. 4 Cir.1986), the Court transferred a case to the Supreme Court in which the sole issue was whether the trial court erred in declaring a statute unconstitutional. The Court held that it did “not have appellate jurisdiction of this case ... The Louisiana Supreme Court has exclusive appellate jurisdiction over cases in which a law of this state has been declared unconstitutional.” Id. at 1212, citing Derouen v. Kolb, 389 So.2d 761 (La.App. 3 Cir.1980).
On this basis, we find that the question of the Ordinance’s constitutionality is not properly before us. We now turn to the remaining issues in this appeal.
Summary Judgment as to the Enactment of the Ordinance
In addition to the issue of the Ordinance’s constitutionality, the Joint Motion sought summary judgment as its validity, on the basis that the Ordinance was enacted by Plaquemines without complying with the notice requirements of the | «Plaquemines Parish Home Rule Charter.[9] More specifically, the Joint Motion contends that no notice was published prior to the Ordinance’s enactment. In support of this position, the Joint Motion relies on unpublished Reasons for Judgment issued in 1995 in the matter entitled “Plaquemines Parish Government v. B & A Materials and Frankie Adolph, Jr.,” case number 39-952, from the 25th Judicial District Court for Plaquemines Parish (the “B & A ” case), which recognized that the notice provisions of the Home Rule Charter were not met.[10] The appellees note that the trial court took judicial notice of the ruling in the B & A case and suggest that no supporting documents are required for a summary judgment in this matter or a finding that Plaquemines did not properly enact the Ordinance. In that regard, ap- *904 pellees contend that the trial court could rely on the factual findings of the B & A Reasons for Judgment. We disagree.
We first note that the unpublished and unreported Reasons for Judgment in the B & A case relate to that trial court’s grant of a new trial. While the Reasons for Judgment discuss the validity of the enactment of an ordinance, there is absolutely no mention of the specific ordinance to which this 1995 decision is directed, as it is never identified by the trial court. The lack of clarity in the B & A Reasons for Judgment, however, are inconsequential as we find that the Joint Motion was ^insufficiently supported and accordingly, the trial court erred in granting the Joint Motion on this issue.[11]
La. C.C.Pr. art. 966(B) specifies that summary judgment shall be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” The mover has the initial burden of producing evidence in support of its motion and can ordinarily meet this burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. Schultz v. Guoth, 10-0343, p. 6 (La.1/19/11), 57 So.3d 1002, 1006, citing Samaha v. Rau, 07-1726, p. 4 (La.2/26/08), 977 So.2d 880, 883.
The Joint Motion attached no supporting documentation which pertains to this lawsuit, by way of affidavits, deposition testimony, discovery responses or responses to requests for admission. It relies solely on the unpublished 1995 Reasons for Judgment in the B & A case. The record contains no documents upon which the B & A case was decided, nor any documents which support any of the factual allegations upon which the Joint Motion’s argument that the Ordinance was improperly enacted is based. We do not find that the Reasons for Judgment in the B & A case are sufficient to establish any facts in this matter. We further decline to take judicial notice of the “facts” purportedly established by this ruling, as the unreported B & A case is not the type of record for which judicial notice is appropriate.
in.Judicial notice must be taken of certain legal matters: presidential and gubernatorial proclamations; rules of Louisiana state agencies, boards and commissions; ordinances of political subdivisions of this state; procedural rules of federal and state courts; rules of federal and state agencies, boards and commissions; and laws of foreign countries, international law and maritime law. La. C.E. art. 202(B). Notably, decisions of trial courts are not included in this enumeration and courts have consistently observed that there is no provision in the law for a court to take judicial notice of a suit record from another court. See, e.g., Union Planters Bank v. Commercial Capital Holding Corp., 2004-0871, pp. 3-4 (La.App. 1 Cir. 3/24/05), 907 So.2d 129, 130; Louisiana Business College v. Crump, 474 So.2d 1366, 1369 (La.App. 2 Cir.1985). See also, United General Title Ins. Co. v. Casey Title, Ltd., 01-600 (La.App. 5 Cir. 10/30/01), 800 So.2d 1061, 1065. (“Article 202 does not allow courts to take judicial notice of other courts’ proceedings”).
In United General, a Jefferson Parish court refused to take judicial notice of *905 pleadings and a judgment filed in an Orleans Parish court, noting:
It has been held that Article 202(B)(e) allows courts to take judicial notice of court decisions that have the effect of law. Thomas v. Charles Schwab & Co., Inc., 95-1405 (La.App. 3 Cir. 9/25/96), 683 So.2d 734, 737. That would not apply here, however, because we are asked to notice proceedings of a district court, which have no effect except in the specific ease in which the rulings are made. Id.
Likewise, La. C.E. art. 201(B) provides that “[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either: (1) Generally known within the territorial jurisdiction of the trial court; or (2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be ^questioned.” Pursuant to this article, courts may properly take judicial notice only of facts that may be regarded as forming part of the common knowledge of every person of ordinary understanding and intelligence. Dufresne v. Dufresne, 10-963 p. 5 (La.App. 5 Cir. 5/10/11), 65 So.3d 749, 753, citing, State Block, Inc. v. Poche, 444 So.2d 680, 684 (La.App. 5 Cir.1984).
In the instant matter, the manner in which the Ordinance was enacted is not “common knowledge” and thus subject to judicial notice pursuant to La. C.E. art. 201(E). Nor can we take judicial notice of the factual findings of the B & A case on any other basis, as they have no effect except in the B & A case.
Accordingly, the Joint Motion contained no documentation which supports any facts in this case and more particularly, any competent facts to demonstrate that the Ordinance was improperly enacted. We therefore conclude that the trial court erred in relying on the B & A case’s Reasons for Judgment and in granting summary judgment as to the validity of the Ordinance’s enactment.
Summary judgment as to Ordinance 9-40
On November 2, 2011, Plaquemines filed an Amended Petition in Intervention (“Amended Intervention”) which added claims that the plaintiffs failed to comply with the permit requirements of parish ordinance 9-40 and violated the “borrow pit moratorium” set forth in parish ordinance 92-100. The Amended Intervention was filed well after the Joint Motion was filed.[12] Clearly, the Joint Motion did not address the new claims raised by the Amended Intervention. Nonetheless, the trial court’s judgment dismissed Plaque-mines’ Intervention in its entirety, implicitly including the new claims of the Amended .^Intervention. Appellees maintain that, because the parties discussed the validity of ordinance 9-40 and the moratorium of ordinance 92-100 in the various briefs filed with the trial court, the issue was properly before the court.[13]
Appellees further argue that the Amended Intervention was untimely pursuant to the trial court’s scheduling order and therefore, should not be considered. We note that, by order dated November 3, 2011, the trial court allowed the Amended *906 Intervention to be filed. No party filed any pleadings to challenge the timeliness of the Amended Intervention. In fact, Ev-enstar filed an answer to the Amended Intervention without reservation. Because the trial court never addressed the issue of the Amended Intervention’s timeliness, that issue is not properly before us. (“It is well established that as a general matter, appellate courts will not consider issues raised for the first time, which were not pleaded in the trial court below and which the trial court has not addressed.”) Billieson v. City of New Orleans, 09-0410, p. 8 (La.App. 4 Cir. 11/12/09), 26 So.3d 796, 801-02, writ denied, 2010-0064 (La.6/4/10), 38 So.3d 301 (citing Johnson v. State, 02-2382, p. 4 (La.5/20/03), 851 So.2d 918, 921).
Turning to the dismissal of Plaque-mines’ claims in the Amended Intervention, we find that the trial court erred in dismissing those claims, as they were not raised by the Joint Motion. First, Plaque-mines was not the mover for summary judgment and there is no question that the Joint Motion did not seek summary judgment as to the new claims set forth in the Amended Intervention. We know of no statute or case law by which an argument raised in opposition to a | ^motion for summary judgment is transformed into its own motion for summary judgment. See. e.g., Robertson v. Doug Ashy Bldg. Materials, Inc., 2010-1552, p. 12 (La.App. 1 Cir. 10/4/11) 77 So.3d 339, 348, writ denied, 2011-2468 (La.1/13/12), 77 So.3d 972, (where defendant raised the issue of plaintiffs exposure to asbestos purchased from it in its motion for summary judgment and in its memorandum in support, also raised the issue of whether the exposure was a substantial factor in causing plaintiffs illness, the latter issue was not properly before the court: “a memorandum, opposition or brief is not a pleading, and therefore, raising the issue in a memorandum is not the equivalent of raising the issue in an actual pleading or motion.” (Citation omitted)); Allen v. Carollo, 95-1840 (La.App. 1 Cir. 4/4/96), 674 So.2d 283, 290 (“[Appellant] first raised the constitutionality of the retroactive application of the statute in a supplemental memorandum in opposition to the motion for summary judgment ... we find the issue of whether LSA-R.S. 9:5605 is unconstitutional on any basis is not properly before this court, nor was it properly presented to the trial court ... the issue was not specifically pled; it was brought before the court as an argument in [Appellant’s] supplemental memorandum opposing the motion for summary judgment.”); Melton v. Horton, 10-496 (La.App. 5 Cir. 12/14/10), 55 So.3d 897 (trial court erred in dismissing all of plaintiffs claims where partial summary judgment motion did not address every claim).
Second, La. C.C. Pr. art. 966(E) states that, while summary judgment “may be rendered dispositive of a particular issue ... [and] cause of action ... even though the granting of the summary judgment does not dispose of the entire case ...[,] a summary judgment shall be rendered ... only as to those issues set forth in the motion under consideration by the court at that time.” (Emphasis added). In the instant matter, the issues “set forth” in the Joint Motion did not concern any of the new claims raised by the Amended Intervention and therefore, should not have been dismissed by the trial court.
Finally, even under a de novo review of the record,[14] we find the record to *907 be devoid of any documents under La. C.C.Pr. art. 966(B), demonstrating that there are no factual issues with respect to the claims in the Amended Intervention. Nor is there a statement of uncontested material facts as to the Amended Intervention’s causes of action. Rather, in their reply brief to Plaquemines’ opposition to the Joint Motion, plaintiffs/Evenstar devote a two-paragraph argument as to the new claims in the Amended Intervention. Nothing was attached to support any facts raised by the arguments plaintiffs/Evens-tar advance in their reply brief. As this Court has recognized, “[ajrguments of counsel, whether oral or in writing in the form of briefs and memoranda, no matter how artful, are not evidence.” Alomang v. Freeport-McMoran, Inc., 97-1349 (La.App. 4 Cir. 3/4/98), 718 So.2d 971, 973. Thus, we reject plaintiffs/Evenstar’s contention that their argument on these issues constitutes a proper summary judgment motion and we find that appellees have failed to demonstrate that no factual issues remain in dispute as to the new causes of action set forth in the Amended Intervention.
CONCLUSION
Based on the reasons set forth herein, we conclude that the trial court erred in granting summary judgment. The trial court’s judgment is reversed and the |L.¡matter is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED

. Section 18-1, Art. I, Chapter 18 of the Code of Ordinances (now, Section 18-86) provides that a person seeking to excavate or operate a borrow pit within Plaquemines parish for personal or commercial purposes must apply to the parish council and obtain approval for the issuance of an administrative permit.

. Plaintiffs later brought American International Specialty Lines Insurance Company *901 into the suit by way of a First Amended Cross-Claim, as CCI’s liability insurer.

. First Mercury filed an Amended Answer to the Intervention as well, also alleging that the ordinance is unconstitutional, on the same grounds set forth by plaintiffs.

. First Mercury's motions raised the following issues: 1) that its policies do not provide coverage for the damages claims relating to the back-fill of the pit asserted in plaintiffs’ Petition and the Intervention; 2) that no coverage exists under its policies for the periods covering 2007-2008; and 3) that the claims asserted by CCI in its Cross-Claim are not covered by its policies.

. For purposes of this appeal, CCI’s Motion for Summary Judgment is subsumed in this opinion's references to the "Joint Motion.”

. The Reasons for Judgment address only the Joint Motion and do not address the partial summary judgments granted in First Mercury’s favor.

. LSA-Const. Art. 5, § 5(D) provides, in pertinent part, that "a case shall be appealable to the supreme court if (1) a law or ordinance has been declared unconstitutional.”

. While First Mercury’s summary judgments are not considered in this appeal, we note that First Mercury’s appellate brief addresses the issues raised in the Joint Motion. The record reflects that First Mercury joined in the plaintiffs/Evenstar's reply memorandum to Plaquemines' opposition memorandum: however, the record does not reflect that First Mercury ever joined in the Joint Motion itself.

. Plaquemines’ Home Rule Charter provides, in pertinent part, that a proposed ordinance "requiring any permit," "shall be adopted only at a regular meeting of the Parish Council,” after being distributed to the members of the Council and “only after a notice of the introduction on such proposed Ordinance shall have been published in the official journal of the Parish not less than one (1) week nor more than two (2) weeks after the introduction thereof, which notice shall state the substance of the proposed Ordinance and the date of the meeting at which a public hearing shall be held and at which the Council shall begin its consideration thereof ...”

. The Reasons for Judgment in the B & A case, attached as an exhibit to the Joint Motion, state that "[t]here does not appear to be an advertisement pertaining to the proposed ordinance.” In so finding, the trial court relied on the official minutes of the Plaque-mines Parish Council, an affidavit from the publisher of the official journal of the Parish and a copy of the only edition of the Parish newspaper published during that relevant time period.

. Although the Reasons for Judgment do not specifically find that Plaquemines failed to adhere to the notice requirements of the Home Rule Charter, it appears that the trial court implicitly concluded that it had failed to do so, insofar as the trial court granted the Joint Motion in its entirety, and its Reasons for Judgment mention the B & A case.

. As noted herein, the Joint Motion was filed on June 17, 2011.

. Specifically, in its Opposition to the Joint Motion, Plaquemines discussed ordinance 9-40 and the borrow pit moratorium. It is clear that Plaquemines did so only to show that summary judgment was inappropriate on all claims of the Intervention, as the applicability of these ordinances was not raised in the Joint Motion. In their reply briefs, the plaintiffs and First Mercury, too, briefly discussed these ordinances

. On appeal, a summary judgment is reviewed de novo, "using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is enti-tied to judgment as a matter of law.” Sam *907 aha v. Rau, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-883.